# Board of Election Commissioners of Rankin County v. H. L. Davis.

[59 South. 811.]

1. CONSTITUTIONAL LAW. *Delegation of legislative powers. Constitution 1890, section 33. Local and special statutes. Validity. Laws 1910, chapter 112. Laws 1912, chapter 253.*

A statute, the operation or suspension of which, in certain localities may depend on a future vote of the people interested, is not violative of Constitution 1890, section 33, which vests the legislative power in the legislature.

2. SAME.

As the legislature may enact laws, the operation or suspension of which in certain localities is to depend upon a future vote of the people interested, it is not forbidden to re-enact the Laws of 1910, chapter 112, creating the office of county attorney in every county of the state, and by amendment thereto, Laws 1912, chapter 253, provide for a condition subsequent which may or may not suspend or prevent the operation of the original statute in some of the counties of the state.

3. SAME.

The Statute of 1910, chapter 112, became a law immediately after it's passage, and is now a law, unaffected by Laws 1912, chapter 253, and will continue to be the law until repealed by the legislature.

4. SAME.

Chapter 253 of the Laws of 1912 is not violative of section 90 of the Constitution of 1890 for the reason that it is neither a local, private or special law and for the same reason section 87 of the Constitution has no application.

5. STATUTES. *Special law. Validity.*

Section 91 of the Constitution of 1890 is not violated by Laws 1912, chapter 253, as this act does not seek to "enact any law for one or more counties, not applicable to all the counties in the state," since the fact that the law is applicable to all the counties does not change it from a general law to a special, local, or private law.

102 Miss.—32

APPEAL from the chancery court of Rankin county.

HON. SAM WHITMAN, JR., Chancellor.

Suit by Mrs. H. L. Davis against the Board of Election Commissioners of Rankin County. From a decree overruling a demurrer to the bill, defendant appeals.

The facts are fully stated in the opinion of the court.

*Robert B. Mayes, W. E. McIntyre* and *Frank Johnston,* assistant attorney-general, for appellant.

*Green & Green,* for appellee.

No brief of counsel on either side found in the record.

COOK, J., delivered the opinion of the court.

Several interesting questions are presented by this record, but we have concluded to pretermit discussion of all save one. It is always of prime importance to settle all constitutional questions touching the powers of the legislative department of the state as speedily as may be, and especially is this true where the validity of public statutes dealing with purely governmental functions are assailed.

Mrs. H. L. Davis, appellee, filed a bill in equity against the board of election commissioners of Rankin county to enjoin the execution of a statute passed by the legislature at its 1912 session, entitled "An act to amend the act of 1910, creating the office of county prosecuting attorney." A demurrer to the bill was overruled. The board of election commissioners had passed an order calling an election in said county for the purpose of submitting to the electors thereof whether said county should, or should not, elect to "come from under" the provisions of the act of the legislature of 1912, entitled "An act to amend chapter 112 of the Acts of the Legislature of 1910, entitled 'An act creating the office of county prosecuting attorney, prescribing his qualifications, duties and

compensation,' so as to make the office of prosecuting attorney optional with the different counties of the state.''
This order was made in obedience to section 2 of the said
act, and the bill of complaint prayed that the chancery
court enjoin the holding of this election, because sections
33, 87, 90, and 91 of the Constitution are violated by the
act, under the provisions of which the board of election
commissioners had ordered the election.

Section 33 of the Constitution is as follows: ''The
legislative power of this state shall be vested in the legislature, which shall consist of a senate and house of
representatives.'' The bill of complaint alleges this section ''received judicial exposition'' in the case of *Alcorn* v. *Hamer*, 38 Miss. 652; the court in the case mentioned having under review an act of the legislature
passed in 1858, which the court analyzed and stated thus:
''The first section of which declares 'that there shall be
and is hereby levied and assessed a uniform tax of ten
cents an acre on each and every acre of land in this state
lying' within the boundaries of the levee district as therein created, 'except lands held by the state in trust or
otherwise, and school land now exempt from taxation,
which tax shall be continued for the period of five years,
and shall be payable annually, on or before the first day
of April in each and every year, from the first of April,
1859, to the first of April, 1863, inclusive,' etc.: Provided, however, that the said tax proposed to be levied
and collected in the said counties of De Soto,' etc., 'shall
first be submitted to the legal voters in the district of
country proposed to be taxed, on the first Monday in
January, 1859, which said election shall be conducted in
the same manner, and upon the same notice as other elections, and if a majority of the legal voters, residing in
the district of country proposed to be taxed, vote against
the said tax, then the same shall not be levied or collected.' ''

The case of *Alcorn* v. *Hamer, supra,* is taken as the
text of eminent counsel representing appellee, and by its

authority they seek to destroy the act now under review. They have selected the doctrines announced in that case as the true rule for the guidance of this court in the decision of the present case, and it is therefore important to examine the utterances of the court to ascertain the scope of the decision, and just what the court did decide and announce as the rule in this state. On page 753 the court said: "The power to enact a law of necessity includes the right to determine the conditions upon which, in a given case, the law is to come into operation. Hence, when there has been no attempt to surrender the legislative function, or to associate another power in the enactment of a law, it would, at the least, be absurd to hold that an act was invalid, for the reason that its operation was to be defeated or suspended by the happening of the prescribed contingency. The right conferred upon the electors of the district to determine that one of its provisions should not be carried into effect was as clearly ascertained, and as much fixed by the will of the lawmaking power, as any provision contained in the act. It seems, hence, too clear for controversy that the act did not delegate to the electors the right to pass or even approve it. On the contrary, the vote of a majority against the collection of the tax can only be regarded in the nature of a condition subsequent, which might defeat, but which was never intended to confer upon the act validity, as an expression of the legislative will. It was the act itself which made the vote, and prescribed the consequences to result from it."

The court, in the case of *Alcorn* v. *Hamer,* upheld the statute there assailed as violative of section 33 of the Constitution. Just here we may note that a narrow construction of section 33 of the Constitution has not met with much favor in the supreme court of this state in any case coming under our observation. The act construed in *Alcorn* v. *Hamer* did not repeal the law enacted, but it did create a condition subsequent by which

the law might be made inoperative. It must be conceded that the legislature had the power, in the first instance, to have made, as a condition subsequent to the operation of the original statute creating the office of county attorney, the exact contingencies provided for by the act of 1912. This is the precise point decided in *Alcorn* v. *Hamer*. It is, however, earnestly insisted that this cannot be done by an amendment to the "existing law," and when attempted, as in this act, it is tantamount to a delegation of the legislative power to repeal a statute already existing.

This argument, in our opinion, misinterprets the decision of the court in *Alcorn* v. *Hamer*. The precise point presented by the present case was not discussed in that case, but we are unable to perceive any fundamental or substantial difference in the two statutes. The statute construed there was a complete existing law when it came from the legislative hopper, but its operation was suspended by a vote of the people, which power to suspend was prescribed by the statute as a condition subsequent. In the present case we have a statute which does not repeal or suspend, but re-enacts, the original act, with an amendment by way of a condition subsequent, by which the people of the several counties may elect to suspend the operation of the complete existing law. The statute was a law before the amendment act was passed, and will continue to be the law after the election provided for in the amending act. The court said in the case of *Alcorn* v. *Hamer*: "The proviso to the first section seems to have been misunderstood, as it was in the argument assumed that the vote of the majority of the electors was essential to give effect to the provision assessing the tax. It appears to us that the clear and manifest meaning of the proviso is exactly reversed. The majority of the electors might defeat the collection of the tax, and thus render the act as to one of its provisions inoperative; but upon no principle of sound logic

can it be held that the majority vote was intended to give validity, as a law, to the provisions by which the tax was assessed. It was designed to prevent the execution of a law which by express declaration had *previously* gone into operation. . . . It follows, therefore, with absolute certainty, that it would have remained valid and operative, as a law, if there had been no election held or no vote given.''

The court also quoted with approval the reasoning employed by the learned judge in the decision in the case of *State* v. *Parker,* 26 Vt. 363, which is as follows: ''It is admitted, on all hands, that the legislature may enact laws, the operation or suspension of which may be made to depend upon a contingency. This, could not be questioned with any show of reason or sound logic. . . . If the operation of a law may fairly be made to depend on a future contingency, then, in my apprehension, it makes no essential difference what is the nature of the contingency, so it be an equal and fair one, a moral and a legal one, not opposed to sound policy, and so far connected with the object and purpose of the statute as not to be a mere idle and arbitrary one. It seems to me that the distinction attempted between the contingency of a popular vote and other future uncertainties is without all just foundation in sound policy or correct reasoning, and that it has too often been made, more from necessity than choice; more to escape from an overwhelming analogy than through any difference of principle in the two classes of cases.''

If the legislature may enact laws, the operation or suspension of which in certain localities is to depend upon a future vote of the people interested, by what principle of logic or reason can it be contended that the legislature is forbidden to re-enact the law creating the office of county attorney in every county of the state, and by amendment thereto provide for a condition subsequent, which may, or may not, suspend or prevent the operation

of the original statute in some of the counties of the state? The law will not be repealed by the vote. The law of 1910 will still be the law, no matter what may be the vote in Rankin county. The statute of 1912 expresses the legislative will, and provides for a complete scheme of government (the same as was provided by the law of 1910), but goes further, and provides for contingencies which may arise in the future, as a condition subsequent to the passage of the law. The scheme for the election provided by the act of 1912 is a condition subsequent, which might have been provided for by the legislature of 1910, and, in our opinion, there is no sound reason why the same result may not be accomplished by an amendment to the original law. The statute of 1910 became a law immediately after its passage, and is now the law, unaffected by the act of 1912, and will continue to be the law until repealed by the legislature.

There is no merit in the contention that the act in question violates section 90 of the Constitution, for the reason that the act is neither a local, private, nor special law; and for the same reason section 87 of the Constitution has no application.

Section 91 of the Constitution is not violated by this act, as the act does not seek to "enact any law for one or more counties, not applicable to all the counties in the state." We repeat, the act of 1912, or that part of same creating a county prosecuting attorney, is a complete expression of the legislative will, and this has been the law of the state since the passage of the act of 1910, and will continue to be the law "applicable to all the counties of the state," whether the operation of same be suspended by a vote of the people in Rankin county, and other counties or not. The fact that the law is applicable to all the counties in the state, and may be made inoperative in some of the counties, does not change it from a general law to a special, local, or private law. By none of the recognized principles of constitutional

construction can we pronounce this law in violation of the organic law of the state, and we do not feel authorized to resolve all doubts against the law by the employment of a microscopic criticism to attain that end.

The importance of a prompt judicial interpretation of the act under review seems to justify us in assuming the right of the complainant to institute the proceedings in this case; but we think it not inappropriate to postpone a direct pronouncement upon that feature of this litigation to some more opportune time, when there are no reasons of a pressing public nature demanding a decision upon the merits of the controversy. Stated in another way it is the purpose and scope of this opinion to pass upon the constitutionality of the act of 1912, amending the act of 1910, and nothing more.

The decree of the chancellor, overruling the demurrer, is reversed, and the bill dismissed.

*Reversed, and bill dismissed.*