Mayor and Board of Aldermen of City of Jackson *v.* State.

[59 South. 873.]

1. Constitution 1890, Section 71. *Statutes. Sufficiency of title a legislative question. "Ought." Municipal corporations. Officers. Removal. Elections. Eligibility · to office. Violation of constitutional rights. Effect of partial invalidity.*

  The part of section 71, Constitution 1890, providing that a statute shall have a title, is mandatory, but that part of the section providing that the title of a statute ought to indicate clearly its subject-matter is simply directory, the word "ought" in such section being used in an admonitory sense.

2. Officers. *Removal. Legislative act. Constitution 1890, section 175.*

  While section 175 of the Constitution of 1890 prescribes the only method for the removal of public officers, so far as the courts are concerned, and while a legislative act is unconstitutional where the purpose of the law is to accomplish this alone, yet where the general purpose of the law is a lawful exercise of the legislative power, and the incidental effect of the law is to abolish certain officeholders, the act would not be violative of the constitutional rights of the officers.

3. Laws 1912, Chapter 120. *Constitutionality.*

  The Laws of 1912, chapter 120, providing for a commission form of government in cities voting to adopt it, and incidentally abolishing offices and officers is not unconstitutional.

4. Elections. *Elegibility to offices. Constitution 1890, section 250.*

  Section 6 of chapter 120 of Laws 1912 providing that all candidates at an election under this act shall be nominated by a party primary and that no other names shall be placed on the official ballot, does not prevent a voter from writing the name of another candidate on the ballot and voting for him, and is therefore not violative of section 250 of the Constitution of 1890 declaring all qualified electors eligible to office.

5. Sections 7 and 23, Chapter 120, Laws 1912.

  If Sections 7 and 23 of Chapter 12 of the Laws of 1912 be unconstitutional, they do not affect the validity of the balance

of the act as the law may stand without these sections and still be a complete expression of the legislative will.

6. Laws 1912, Chapter 120. *Constitution* 1890, *sections* 61-33.

Chapter 120 of Laws 1912 is not violative of section 61 of the Constitution 1890, because it nowhere attempts to revive or amend any section or sections of any statute of the state, nor is it violative of section 33 of Constitution 1890 as it does not delegate legislative power which is vested in the legislature.

7. Laws 1912, Chapter 120. *Constitutionality*.

Chapter 120 of Laws 1912 in providing for a commission form of government for cities voting to adopt it in no way conflicts with the Constitution and is a valid exercise of legislative power.

Appeal from the circuit court of Hinds county.

Hon. W. A. Henry, Judge.

Mandamus by the state, on the relation of J. H. Howie, district attorney, against mayor and board of aldermen of the city of Jackson. From a judgment overruling a demurrer to the petition, defendant appeals.

The facts are fully stated in the opinion of the court.

*Powell & Thompson,* for appellant.

We contend that this act is unconstitutional and void because its title is violative of the section 71 of the Constitution of 1890 which is as follows:

"Every bill introduced into the legislature shall have a title and the title ought to indicate clearly the subject-matter or matters of the proposed legislation, etc."

The provisions of this section of the Constitution have been declared to be mandatory in two decisions of this court, to wit: *Sample* v. *Town of Venona,* 94 Miss. 264; *Board of Levy Commissioners of Yazoo & Miss. Delta* v. *Royal Ins. Co.,* 96 Miss. 832.

The title to the act in question reads as follows:

"An act to provide for an election to change the form of government of certain cities and prescribing the manner of affecting such change; abolishing all offices exist-

ing therein at the time of such change and providing for
a government of such cities by a council, composed of
a mayor and two councilmen, providing for the election
of such mayor and councilmen, fixing their compensation,
prescribing their several terms of office and defining the
powers and duties to be exercised by said council and
the members thereof; providing for a method by which
the mayor or either councilman may be discharged from
the service of such city during his term of office and his
successor elected.; providing a method for the adoption of
certain ordinances by the electors and the approval by
them of other ordinances; providing a method by which
the powers and duties to be exercised by the council may
be extended, diminished or limited by the electors of
such cities and for other purposes.''

The title of this act violates section 71 of the Constitu-
tion of 1890:

1st.  In that it proposes to contain a provision re-
calling the commissioners while no such provision is in
the body of the act.

2d.  It fails to disclose the sections of the Code of 1906
and the Acts of 1910, chapter 204, which it repeals or
amends.  It does not even mention the municipal chap-
ter.

The court will observe by reference to the municipal
chapter of the Code of 1906 that many sections of the
same have been either amended or repealed by this act
of 1912.  The court will further observe that chapter
204 of the Acts of 1910 has been absolutely repealed and
yet in the act itself there is only a single mention of the
municipal chapter and no reference to the acts of 1910
whatever.  Does then, we might well ask, the title to the
acts of 1912 clearly indicate the subject-matter or mat-
ters of the proposed legislation therein as provided for
in section 71 of the Constitution.

The object of this constitutional provision is manifest.
It was to compel the legislature to clearly disclose in

the title to every act each and every thing contained therein. So that when a bill was read by its title the legislature could gather the full import of the whole bill therefrom. In other words it was to prevent vicious legislation from being passed under false pretenses. We contend that the title to this act is guilty of the sin of commission against said constitutional provision in that it states that there is a provision in the act for the recall of the commissioners which is not true, and it is guilty of the sin of omission in that it fails to disclose the many sections of the municipal chapter which are repealed or amended in the body of the act without any direct reference to the same.

The title purports to abolish all offices. The act does not abolish any.

The title pretends to provide for the recall of commissioners but does not.

The title of the act is silent on the question of eligibility to office which it changes.

The title pretends to fix the compensation of commissioners which it does not do.

The act changes the municipal chapter and repeals Laws of 1910 without notice in the title.

It requires the candidate to be the nominee of a party and does not mention it in the title.

The act changes the general law as to voting for all candidates but does not mention it in the title.

It provides for the recall of subordinate officers but does not mention it in the title.

The act destroys free speech but says nothing of this in title.

We contend that section 4 and 19 of the Acts of 1912 violate section 175 of the Constitution of 1890 in that it seeks to remove public officers elected by the people before the termination of their term of office in a manner not contemplated by the Constitution without abolishing the office itself. For instance, the office of mayor is not

abolished by the act nor the office of the chief of police, city clerk, assessor, etc., nor is the office of aldermen abolished, the words "councilmen" and "aldermen" being according to all authorities synonymous terms.

Now we will admit for the sake of argument that the legislature had a right to abolish a statutory office, yet we deny that it could leave the office intact, and yet remove the office holder in any other method than that provided for under section 75 of the Constitution of 1890. This has been the settled law in this state for nearly seventy-five years. See *Rundell* v. *State*, —— Walker, 146; *Hyde* v. *State*, 52 Miss. 665; *Ex parte Lehman*, —— Miss. 967; *Lizano* v. *City of Pass Christian*, 96 Miss. 640.

Section 175 of the Constitution provides for what causes officers can be removed and also the manner of their removal and the Constitution having spoken the legislature could not alter or add to its provisions in this regard. It cannot be successfully urged that the offices of mayor and chief of police, city clerk, assessor and school trustees have been abolished because these offices remain in the acts of 1912. It is true that the duties of the mayor are changed but the office itself remains intact and so far as the offices of the chief of police, city clerk, assessor, etc., are concerned, not only are they left intact but their name and duties remain absolutely unchanged, and yet under the act it is attempted to remove them from office. But it may be urged that this does not render the whole act unconstitutional because it might be held that these officers could fill out their unexpired terms and the city government go on under the commission form of government but if the court will observe section 5 of the Acts of 1912, it provides:

"That every city operating under the provision of this act shall be governed by a council consisting of a mayor and two councilmen to be chosen as provided by this act."

Section 6 of the Acts of 1912 is violative of section 250 of the Constitution in that it requires an additional

qualification for eligibility to office not required by the Constitution, to wit: that no candidate's name shall be placed upon the ticket unless nominated by party primary and yet section 250 of the Constitution provides that all qualified electors and no others shall be eligible to office except as otherwise provided in this Constitution and so we have it that while a man may be eligible to office in every respect under the Constitution he is denied the right under this act and his eligibility destroyed because forsooth he is not the nominee of a party primary. The voter cannot write his candidate's name on the ticket unless the nominee is dead or ballots lost. See Code 1906, section 4156, 4160 and 4168.

Section 7 of the Acts of 1912 is violative of section 241 of the Constitution of 1890 in that it limits the right of eligibility for office by requiring a voter to vote for all the officers named on the ticket or his vote will not be counted; in other words section 241 of the Constitution says that if a voter is a resident citizen of the state, not insane, and a citizen of the United States and twenty-one years old and has never been convicted of crime, etc., has paid his taxes, he shall be a qualified elector which undoubtedly means he shall have the right to vote. The expressed qualifications in this section of the Constitution excludes the idea that any other qualifications can be required. Now if a citizen has a right to vote surely he has a right to have his vote counted and any law preventing this is violative of the intention and spirit of this section of the Constitution.

Section 23 of this act violates section 250 of the Constitution of 1890 in that it provides qualifications not recognized by the Constitution; to wit, it provides that no man shall be eligible for commissioner unless he has resided three years in the city.

While it is true that section 245 of the Constitution of 1890 provides that additional qualifications may be provided by law for electors nothing of this kind is done

in this act; an elector is duly qualified under the Constitution when he has been one year a citizen and not three years as provided in the act and the Constitution says that being a duly qualified elector he shall be eligible to any office, but this act, while it does not prevent a citizen from voting, does change his qualifications for voting in that it says to the prospective candidate that while you are a qualified voter under the Constitution you shall not hold office unless you have resided three years within the city limits. The Constitution says that you are a qualified elector and as such you are eligible to any office. This act says that you are a qualified elector but you are not eligible to the office of commissioner.

Section 241 of the Constitution fixes the qualifications of the voter.

Section 245 of the Constitution fixes the qualifications of the voter in municipalities.

Section 250 of the Constitution fixes the eligibility of persons to hold office.

Section 24 of the Acts of 1912 violates section 88 of the Constitution of 1890 in that it provides for the insertion of the legislative matter into the charter of the city on the recommendation of the city council without the interference of the legislature in any manner, shape, or form. It violates section 33 of the Constitution which provides that the legislative powers of the State shall be vested in the legislature which shall consist of a senate and house of representatives.

Section 25 of the Acts of 1912 violates section 61 of the Constitution which reads:

"No law shall be revived or amended by reference to any title only but the section or sections so amended or revived shall be inserted at length."

And yet the court will see by looking over the municipal chapter of the Code of 1906 that dozens of sections are amended and changed by the acts of 1912 in utter violation of this section of the Constitution.

The only time that any existing law is mentioned in the Acts of 1912 is in section 25 thereof which says:

"All laws governing cities operating under the provisions of chapter 99 of the Code of 1906, not inconsistent with the provisions of this act, and all general and special laws applicable to special charter cities and not inconsistent with the provisions of this act shall apply to and govern such cities respectively, when organized under this act, etc. . . ."

The Acts of 1912 is therefore but an amendatory act of the chapter 99 of the Code of 1906 but amends it only by reference to its title and without any reference to the section or sections of the chapter 99 or by inserting such amendment at length as required by section 61 of the Constitution.

*Green & Green,* for appellant, filed an elaborate brief too long for publication.

*George B. Powers,* for appellee.

Commission government: The general question of commission government is one of first impression in this court. While government by commission had not been entirely unknown up to that time, still the beginning of the plan in this country was when the legislature of Texas withdrew the right of the city of Galveston to govern itself and "commissioned" five men to administer its affairs. There are now more than two hundred commission-governed cities and Nevada, Arkansas, New Hampshire and Rhode Island are the only states which have failed to accord recognition, in some measure to the plan, the better name for which would be the short ballot form of government.

What other courts have held: This being a question of first impression here, we turn to the courts of other states where similar statutes have been enacted to find what they have held; the question has been passed upon only in Iowa (137 Iowa, 452); Washington (35 L. R. A.

[N. S.] 802); Kentucky (143 Ky. 422); Kansas (80 Kan. 251); Texas (97 Tex. 1); Illinois (96 N. E. 914); Idaho (119 Pac. 692). In most of these cases the constitutionality generally of the commission form of government has been sustained; the Constitutions of practically all of the states are similar to the Constitution of Mississippi.

*Eskerson* v. *City of Des Moines,* 137 Iowa, 452: Perhaps the leading case to be found on this subject and the one most often cited as authority; an action in equity for an injunctional decree; held that the constitutional guaranty of a Republican form of government was not violated by committing executive, legislative and judicial departments to a single governing body, that such applied only to state governments and not to municipalities; that it is not violative of the constitutional inhibition as to local and special laws or the constitutional requirements as to uniformity of laws; sustains the law against the attack made on the delegation of legislative power, removal from office and initiative and referendum; the case at bar is on allfours with the Eckerson case and the several constitutional provisions of Iowa are substantially and in some instances identically the same as those of our own state.

*State of Washington ex rel. Hunt et al.* v. *Tausick,* 35 L. R. A. (N. S.) 802: An action in mandamus to compel the calling of an election under the commission government act which it was contended was unconstitutional and void; held that the act was not special legislation, did not unconstitutionally delegate legislative power and was not unconstitutional as amending a former statute by a mere reference to its title.

*Cole* v. *Dorr,* 80 Kan. 251: The commission government law of Kansas and our own chapter 120 of the laws of 1912 are very similar as are also our constitutional provisions; the Kansas court held that the act was not violative of the several provisions of the Constitution,

(a) vesting the legislative power in the house and senate, (b) forbidding the passage of special acts conferring corporate power and requiring provision to be made by general law for the organization of cities, (c) requiring all laws of a general nature to have a uniform operation.

*Bryan* v. *Vose,* 143 Ky. 422: Injunction to prevent organization under the commission government act; held that act was not violative of constitutional provision that no law shall be revised or amended by reference to its title only; that the subject of the act was fully expressed in the title; that the act was not special legislation; that it was not void because enacted to take effect upon the approval of a city.

*People ex rel. City of Springfield* v. *Edmonds,* 96 N. E. 914: A proceeding by mandamus to put in force the commission government act in the city of Springfield; the court held that the act was not violative of the constitutional inhibition of special or local legislation affecting the incorporation of villages, cities, etc.; that it was not violative of the Constitution of the United States guaranteeing a Republican form of government.

*Kessler* v. *Fritchman,* 119 Pac. 692: Mandamus proceeding to compel mayor to call election; the whole question of commission government was considered and abundantly sustained; particularly the question of local and private legislation.

*Brown* v. *Galveston,* 97 Tex. 1: Court sustained right of the legislature to confer upon the governor the power to appoint councilmen or commissioners for the city of Galveston; upheld the principle of commission government throughout.

Statutory construction: A statute ought to receive such a construction as is consonant to the manifest policy of the legislature, indicated in its passage, although in opposition to its strict letter. *Ingram* v. *Speed,* 30 Miss. 410; *Read* v. *Manning,* 30 Miss. 308; *Olive* v. *Walton,* 33 Miss. 103; *Dantzler Lbr. Co.* v. *State,* 97 Miss. 355, 123

Am. St. Rep. 82, 118 Pas. 982, 133 N. W. 259; 6 S. & M. 628, 8 S. & M. 151, 32 Miss. 650.

Legislative control over municipalities: The general doctrine is that over all municipalities, as governmental agencies, the legislature is supreme, except as limited by constitutional provisions. 1 Dillon on Mun. Corp. (5 Ed.), ——; 24 Mich. 44, 107 N. W. 87; *Adams* v. *Kuyken-dall,* 83 Miss. 571.

Ministerial officers: Mandamus will lie to compel the performance of duties purely ministerial in their nature, when they are so clear and specific that no element of discretion is left in their performance: 34 L. R. A. (N. S.) 1060; 24 L. R. A. (N. S.) 1260; 47 L. R. A. 512; 122 Pac. 773; 138 Am. St. Rep. 964; 55 So. 596; 54 So. 894; 23 Miss. 276 and 600; 99 Miss. ——.

Contention that time to call election had passed: *Pigott* v. *State,* 54 So. 257; Short on Extra Leg. Rem., 325; Merrill on Mandamus, p. 225, sec. 185; High's Extra Leg. Rem., p. 286, sec. 401; Dillon on Mun. Corp. (5 Ed.), 2664.

Amendment by title: Our commission government act is not violative of section 61 of the Constitution providing that "no law shall be revived or amended by reference to its title only, but the section or sections as amended or revived shall be inserted at length; it is neither amendatory nor revisory in character; it is one of those statutes which refers to and by reference adopts wholly or partially pre-existing statutes and the validity of such reference statutes has been uniformly upheld by the courts of the land:

See *Washington* v. *Tausick,* 35 L. R. A. (N. S.) 802; *Bryan* v. *Vose,* 143 Ky. 422; *Kessler* v. *Fritchman,* 119 Pac. 692; *Savage* v. *Wallace,* 51 So. (Ala.) 605; 36 Cyc. 970; *Smith* v. *Willetts,* 79 Atl. 1038; *Campbell* v. *Board,* 45 N. J. Law, 241; *State* v. *Hancock,* 54 N. J. Law, 393, 26 Am. & Eng. Ency. Law, 711; 170 Ind. 439; 23 Vroom, 521; 61 N. J. Law, 23; 123 Iowa, 294; 119 Pac. 692; 32

L. R. A. (Ala.) 520; *Phoenix* v. *Fire Dept.*, 42 L. R. A.
(Ala.) 468; 14 Am. & Eng. Ann. Cases, 994; *Lum* v.
*Vicksburg*, 72 Miss. 955; 9 Am. & Eng. Ann. Cases
(Mont.) 579; *State* v. *Leich*, 9 Am. & Eng. Ann. Cases
(Ind.) 303.

Delegation of legislative power: The commission gov-
ernment act does not violate section 33 of the Constitu-
tion which provides that "the legislative power of the
state shall be vested in the legislature which shall con-
sist of a senate and house of representatives. The legis-
lature may enact laws, the operation or suspension of
which may be made to depend upon a contingency and
there is no distinction between the contingency of a pop-
ular vote and other future uncertainties.

This proposition was settled in the case of *Rankin
County* v. *Davis*, 59 So. 811. Other authorities in sup-
port of the proposition are *Cole* v. *Dorr*, 22 L. R. A. (N.
S.) 534; *Eckerson* v. *Des Moines*, 137 Iowa, 452; *Wash-
ington* v. *Tausick*, 35 L. R. A. (N. S.) 802; *Alcorn* v.
*Hamer*, 38 Miss. 652; *Rohrbacher* v. *Jackson*, 51 Miss.
775; *Barnes* v. *Board*, 51 Miss. 307; *Jackson* v. *Schlom-
berg*, 70 Miss. 47; *Williams* v. *Cammack*, 27 Miss. 209;
143 Ky. 422; 64 Miss. 59; *Cox* v. *Wallace*, 85 Miss. 276.

Distribution of power: In the absence of any consti-
tutional restriction it is within the province of the leg-
islature to clothe an officer or agency created by it with
functions involving the exercise of powers executive, leg-
islative and judicial in character—one or all. *Eckerson*
v. *Des Moines, supra;* Smith on Corporations, p. 153;
Cooley on Const. Lim., sec. 133; 20 Am. & Eng. Ency.
Law, 1223; 143 Ky. 422; 97 Tex. 1, 11 L. R. A. (N. S.)
1092; 44 Ore. 118.

Special act: The case of *Rankin County* v. *Davis, su-
pra,* is a complete answer to the objection urged that the
act in review is a special act; other authorities to the
same effect are: 96 N. E. 114; 41 L. R. A. 775; 1 Atl.
385, and the cases cited in the opening of this brief.

Sufficiency of title:  It is urged that the title to the act was bad because it violates section 91 of the Constitution which provides that "every bill introduced in the legislature shall have a title and the title ought to indicate clearly the subject-matter or matters of the proposed legislation."

If there is anything in the English language and the knowledge of it and its use, the words "shall" and "ought" when used in the same sentence do not mean the same thing.  If the makers of the Constitution who weighed carefully every word that went into every sentence of that splendid instrument had intended that "the title *shall* clearly indicate the subject-matter," they would have said that *shall* and not that it *ought*.

This court decided almost the identical question in the case of *Richards* v. *Magnolia,* 56 So. 386.

Titles of statutes need be neither an abstract, a synopsis nor an index of their contents.  123 Am. St. Rep. 82.

The constitutional requirement that the object of every act shall be express in its title is satisfied when the title fairly indicates the general object of the statute, etc.  1 Atl. 835.

It is interesting to note that our Constitution stands alone, so far as I can find in the use of the word "ought" —the others use the word "shall" and yet in spite of that more emphatic word, the supreme courts of the various states have been almost uniform in holding as did the New Jersey court.

The act under review is not guilty of the sin of either omission or commission in this respect.

Removal of officers:  The legislature cannot legislate out of office any constitutional officer where the purpose of the act is to accomplish this alone, but where the power is given to the legislature to legislate upon any particular subject-matter, and in strict conformity to the power, they do legislate, and it has the identical effect of abol-

ishing certain officeholders holding office under the gen-
eral provisions of the Constitution, those officers will be
presumed to have been elected and to have accepted their
offices in subservience to the power which existed in the
legislature, by the exercise of its constitutional power,
to dispose with the officeholders as the incidental effect
of the passage of the act, etc. The general provisions of
the Constitution must yield when they come in conflict
with the other provisions of a more specific, greater and
more general effect. *Coner* v. *Gray*, 88 Miss. 497; see,
also, *Kendall* v. *Canton*, 53 Miss. 526.

It cannot be contended that the constitutional conven-
tion ever intended to give the legislature absolute power
and control over municipalities, to govern them accord-
ing to their own will and pleasure and then have that
power abridged by the fact that when they undertake
to do so they are confronted with one officeholder who
would block the whole scheme as perfected by the legis-
lature.

It is too well settled to need the citation of authorities
that an office is not a contract but simply a public trust
and cannot be claimed as a matter of right as against
subsequent legislation making changes therein.

Primary nominations: The voter's constitutional
right to vote for whom he pleases is not taken away from
him by the requirement that all candidates shall be nom-
inated by party primary; while the section would pre-
vent the commissioners of election from "placing the
name on the official ballot" there is nothing to keep the
voter from writing the name of whomsoever he pleases
on that ballot and having his vote counted.

The exact language appears in the Iowa act and the
court considered the question at length, holding that
the voter's constitutional rights were not thereby
abridged; and the constitutional provisions of Iowa and
Mississippi are similar.

Requirement to vote for two, etc.: There is abundant
authority for the proposition that part of a statute can

be held unconstitutional and the remainder still stand and still be a complete expression of the legislative will.

Qualifications of mayor and councilmen, etc.:  The same argument applies to this as to the preceding provision; the provision as to three-year residence may be eliminated without in any manner affecting the purpose of the act.     The objection on this ground, however, is premature.

Initiative, referendum and recall:  Whatever may be the view of the court as to the validity from a constitutional point of view of the initiative, referendum and recall as applied to matters of state, there can hardly be any room for discussion as to their constitutionality as applied to matters municipal.

This question is fully discussed in the cases cited in the opening of this brief; it runs through all the commission government acts and is a part of them and has uniformly been upheld and sustained along with the other provisions common to such acts.

When the commission government act became effective:  The several provisions of the act, taken together, clearly indicate that it is to take effect when and only when the mayor and councilmen have been elected to administer the affairs of the city; there must, of necessity, be an apparent hiatus between the adoption of the act and the selection of the officers to administer its affairs; until their terms of office begin, it was never intended by the legislature, and the intent of the lawmaking body can be fairly gathered from reading the whole act, that there should be any change in the manner of administering the city's affairs.

The court will consider the whole act reconciling, if possible, any apparent conflict in its provisions with a view of sustaining the validity of the act.

*J. A. P. Campbell, amicus curiae.*

It is the opinion of Green & Green and Judge POWELL, on which a majority of the aldermen acted it is said, the

commission act violates section 88 of the Constitution which they said was designed to secure uniformity in municipal corporations. This is a misconception of the section. It had no such purpose. There were hundreds of municipalities in Mississippi when the Constitution was made wholly unaffected by this provision and it does not require uniformity in charters. It does not require a law containing the various provisions of such charters. It was not necessary to enact a law such as was contained in the Code of 1892, though entirely proper to do so; but it is notable that the law passed in 1892 does not in any way affect previously existing cities and towns and it contains a provision for amending charters not by the rule of uniformity, but each for itself, according to its need, and under it any city or town may amend according to its own notion not violating any laws. The Constitution and Code left existing cities and towns free to continue under their former charters or to adopt that povided by the Code and the legislature in 1900 authorized those which had not adopted the Code chapter to amend their charters, but in all that, nowhere is there any intimation even of requiring uniformity. It would be folly to require uniformity, so diverse are conditions affecting different localities.

A skeleton act, such as the Code contains for corporations other than for cities and towns, would have met the requirement of section 88 of the Constitution. Why not? The section does not say anything as to the contents of the required law. It left that to the legislature, which might very well have made a law widely different from that made and it would have been perfectly valid.

There seems to have been some misunderstanding of sections 88 and 87 of the Constitution and it were well to clear it up.

The proposition that cities and towns may not be incorporated or their charters amended by the legislature as before the present Constitution was adopted is not

maintainable. Many without due consideration have been misled by the declaration of section 178 in these words, "corporations shall be formed under general laws only;" but this does not embrace cities and towns (municipal corporations), for section 199 defines corporations included by section 178, so as to exclude cities and towns spoken of as corporations . A clear distinction is drawn by the Constitution between cities and towns and corporations. Wherever they are mentioned as corporations by the Constitution it is with the prefix "municipal." to distinguish them from corporations as employed by it in sections 104, 139, 183.

Section 100 draws the distinction clearly, "corporation or any city or town." So section 183, "county, city, town, or other municipal corporation."

Section 88, which has been erroneously supposed to prohibit chartering or amending charters of cities and towns, clearly draws the distinction between cities and towns and corporations thus: "cities and towns may be chartered and their charters amended and under which corporations may be created, etc."

The legislature is not expressly nor impliedly prohibited from chartering or amending charters of cities or towns. It is expressly declared by section 88 that all such laws shall be subject to repeal or amendment.

This section requires passage of a general law but does not forbid a special law which section 178 does as to corporations other than municipal. The fact that there is prohibition to incorporate by special act other than municipal and no prohibition as to municpal is decisive in favor of the right to charter or amend as to municipal corporations.

While a general law is required for cities and towns there is no prohibition of special legislation to charter or amend. The power of the legislature, as the repository of all legislative power, was not exhausted by obeying section 88. There is no prohibition of special legisla-

tion. Denial of power by implication is dangerous. Scores of special acts amending charters are found in our laws. Very calamitous consequences would result from holding them unconstitutional.

I am aware that in *Monette* v. *State,* in 91 Miss. it was held, inadvertently, I think, that it was not lawful for the legislature to amend the charter of Meridian, but, in my opinion, that announcement is clearly wrong and cannot be adhered to. It is of great importance that the announcement in that case be corrected as soon as possible, as many acts of the legislature in disregard of it have been passed. The court in that case did not have the benefit of an exhaustive argument of the question and seems to have given little consideration to it.

Section 88 of the Constitution properly interpreted is a very wise one but to hold that it forbids the legislature to charter or amend is inadmissible in my view.

To deny to the legislature power to charter or to amend existing charters is to disable it to meet the varying conditions of the hundreds of cities, towns and villages of the state, according to their differing situations and necessities. It is impossible for human wisdom to foresee and adequately provide for the necessities of the great multitude of municipalities in the state which time may disclose. What suits one may not be applied to another differently situated. Surely it may be safely left to the legislature, which has obeyed section 88 of the Constitution, to incorporate a city or town or to amend the charter of one as experience has shown to be necessary and the legislature may deem wise.

A remarkable thing about the Meridian case mentioned above is that its charter was not under the general law for cities and towns.

The notion that the Constitution intended all cities and towns to be governed by the same charter is shown to be erroneous by its failure to so require as to the many existing under special charters, when it was made; and by

the Code chapter, framed by a committee appointed by the direction of the Constitution which made it optional with them as to the acceptance of the Code chapter.

The Constitution in sections 87 and 90 declares what special laws shall not be passed and acts to charter or amend charters of cities and towns are not among the prohibited acts. These sections have no reference to municipal corporations in their prohibition. The corporations mentioned are those other than cities and towns. Section 71 of the Constitution, to wit:

"Every bill . . . shall have a title and the title ought to indicate clearly the subject-matter of the proposed legislation." The sufficiency of the title is required to be decided on and reported by the committee to which a bill is referred. I doubt if the sufficiency of a title is a judicial question; the title of this law certainly meets all requirements.

"Every bill shall have a title." Therefore, there can be no law without a title. The title ought to indicate clearly what? Not the contents of the bill, but the subject-matter or matters of the proposed legislation—the purpose of the bill—the object to be accomplished—not the details of the bill.

There must be a title. This ought (should) to indicate clearly what is proposed to be effected by the bill—not the means of doing it. The change from shall to ought is decisive of the purpose of the Constitution; there is little, if any, difference between ought and should and a shade is not to be seized to nullify an act of the legislature.

A title is essential to a bill, without which it cannot be a law. The declaration of what it should contain is directory to the legislative committee, intended to prevent the passage of bills with provisions to accomplish a result different from the purposes indicated by the title. It is to prevent the legislature from being misled by the title as to the purpose of the bill and where the provisions

of the bill are for the accomplishment of the purpose of the bill as indicated by its title, the Constitution is satisfied . If the question.is for the court, any other rule than this would be unsafe to apply to legislative acts.

But if it is a question for the court and a rigid rule is applied, the title of chapter 120 of the Acts of 1912 will stand the test of even an extreme view. Its title indicates clearly and with unusual fullness the subject-matter of the proposed legislation, viz., a change by the vote of their electors of the government of cities from their present mode to a different one. To hold a different view is to require the title of a bill to embody its provisions.

Ought is not equivalent to shall, which should be decisive of the purpose of the constitutional provisions.

The purpose of section 71 of the Constitution and section 61 is the same, i. e., to prevent the enactment of laws without affording members of the legislature an opportunity to note what they vote on. Where the title does that, the purpose of the Constitution is met. A law may be repealed or a section may be inserted at length, which shows the purpose of the several provisions of the Constitution to be set forth in this argument.

*R. B. Mayes* and *Watkins & Watkins,* for appellee, filed an elaborate brief too long for publication.

Argued orally by *Marcellus Green* and *Robt. Powell,* for appellants, and *W. H. Watkins* and *Geo. B. Power,* for appellees.

COOK, J., delivered the opinion of the court.

This is a mandamus suit brought to compel appellant to comply with the terms of chapter 120 of the Laws of 1912, being an act to change the form of government of certain cities, and prescribing the manner of effecting such change.

It appears from the petition, and being admitted on the demurrer, that a valid petition was filed for an elec-

tion in compliance with section 2 of said act, and that an election was held thereunder as provided in section 3, resulting in favor of the change of the system of municipal government, but the mayor and board of aldermen, although they had ordered the election in compliance with the terms of said act, refused to receive the returns of the election officers, but, upon the other hand, took the position that the act was unconstitutional, and announced their purpose of disregarding the same.. The court below ordered the mandamus issued, and from this action of the court this appeal is prosecuted.

One of the points made is the title of the act is insufficient, and, for this reason, the law is of no effect. We think the arrangement of the several sections composing article 4 of the Constitution, and the assignment of same to different subdivisions of the article (which may be termed subjects), is of some significance and may aid in the construction and application of a single section, or group of sections.

Article 4 is thus subdivided: (1) "Legislative Department." (2) "Qualifications and Privileges of Legislators." (3) "Trial of Officers." (4) "Rules of Procedure." .5) "Injunctions." (6) "Local Legislations." (7) "Prohibition." (8) "Miscellaneous." It will be noted that sections 71 and 74 are placed under the subject, "Rules of Procedure." It is observable that section 74 employs the prohibitive words, "No bill shall become a law," and yet, under the decisions of this court, the enforcement of this section is not a judicial question, and the courts have no power to control the observance by the legislature of this section.

Judge CAMPBELL, speaking for the court, in *Ex parte Wren,* 63 Miss. 532, 56 Am. Rep. 825, before the adoption of the Constitution of 1890 and dealing with a cognate question, uses this forceful language: "If the validity of every act published as law is to be tested by examining its history, as shown by the journals of the two houses

of the legislature, there will be an amount of litigation, difficulty, and painful uncertainty appalling in its contemplation and multiplying a hundred fold the alleged uncertainty of the law.'' These terse phrases embody the very essence of judicial wisdom, and evidence a foresight little short of inspiration. After the adoption of the Constitution of 1890, the same great jurist was again the spokesman of this court, and centers the bull's eye thus: ''If members of the legislature violate their oaths by disregarding the plain directions of the Constitution, the courts are powerless to redress the wrong, except as to matters apparent in their finished action. The Constitution, as to mere rules of procedure prescribed for the legislature, is committed to the members individually and collectively, and the houses are intended as a mutual check, and the governor on both, and courts will not inquire into the antecedents of legislative enactments, and have no claim to be present at the parturition. Their duty begins when legislative travail is over.'' *Hunt* v. *Wright,* 70 Miss. 307, 11 South. 610.

Section 71 is also assigned to ''Rules of Procedure,'' and it is visible from the choice of its language that the framers of the Constitution had in mind the ills and afflictions so graphically depicted by Judge CAMPBELL in the case of *Ex parte Wren.* We do not wish be be understood as holding that section 71 is solely addressed to the legislative conscience, because this section requires a title for every law—and an act without a title would not be a law—and the violation of the Constitution would thus appear upon the face of the act. We use the construction placed by the court upon section 74 to emphasize our views of section 71. It is observable that this section is mandatory to the extent that ''every bill . . . shall have a title;'' but, when it speaks concerning what the title should contain, the weaker word ''ought'' is used. ''Ought'' is a shade stronger than ''should,'' but a ''shade is not to be seized to nullify an

act of the legislature." It is quite manifest that the words were carefully selected and advisedly used, the one being mandatory and the other admonitory, or advisory. Thus it appears by sections 71 and 74 three "shalls" and one "ought" are addressed to the legislature, and we are asked to follow *Levee Commissioners* v. *Insurance Co.,* 96 Miss. 832, 51 South. 2, and thereby add a fourth "shall" by construing "ought" to mean the same thing as "shall." We think an examination of this case will show that the act there discussed had no title at all, but if it may be construed to hold that the courts are empowered to nullify acts of the legislature because, in the opinion of the court, the title does not indicate all it should indicate, we decline to follow it. The unwisdom of this rule is demonstrated by the criticisms of the title of the act, the subject of this litigation. The court was entirely warranted in holding that the act reviewed in *Levee Commissioners* v. *Insurance Co., supra,* had no title at all. There are many reasons to assume that the framers of the Constitution intended, by the use of this word, to make impossible in this state that character of litigation so common in some other states, as to almost create a judicial scandal. Being mindful of the fact that the legislature could be trusted to do some things without the advice, aid, or restraint of the courts, the wise men who wrote the Constitution of 1890, after saying what ought to be done, left the sufficiency of title to the department commissioned to write the statute laws of the state.

It is rightfully said that the effect of the election in the present case is to abolish the offices and officers holding office by election under chapter 99 of the Code. It is admitted that the office may be abolished, but it is insisted that section 175 of the Constitution prescribes the only method for the removal of public officers. We think this is true, so far as the courts are concerned. No public officer may be removed by any sort of court procedure.

except it be done in accordance with the provisions of section 175; and it is also true that no executive or judicial officer has the power to remove public officers. It may be conceded, for the purposes of the present case, that the legislature cannot legislate out of office constitutional officers, and that the offices of municipalities belong to that class, but we think that this statement is perhaps not altogether accurate. When the purpose of the law is to accomplish this alone, the law is undoubtedly unconstitutional, but where the general purpose of the law is a lawful exercise of the legislative power, and the incidental effect of the law is to abolish certain officeholders, the act would not be in violation of the constitutional rights of the officers. *Connor v. Gray,* 88 Miss. 497, 41 South. 186, 9 Ann. Cas. 120.

But we prefer to give to the law under review such construction as will harmonize it with the Constitution. We think the act of 1912 abolished all of the offices of the city existing under the former law, and provides for an entirely different form of government by which the affairs of the municipality are to be administered. The official name of the presiding councilman under the present law and under the old law is the same, but the functions, powers, and duties are quite different. While he will still be called mayor, yet his duties and powers, except in one particular, are very much enlarged and of a different sort.

It is contended that section 250 of the Constitution is violated by sections 6, 7, and 23 of the act in question. Section 6 merely provides how candidates be placed on the official ballot, viz., by nomination of a party primary. The general law, we find, also prescribes exclusive means by which candidates may have their names printed on the official ballot. The methods are more numerous, but nevertheless they are restrictive, and, if the statute under consideration violates section 250, the general election laws are void for the same reason. This

question has been frequently adjudicated in other states.
The Supreme Court of Missouri in *Bowers* v. *Smith,* 17
S. W. 761, construing an act of the legislature of that
state similar to the section of the act under construction
here, said: ''By our Constitution general elections are
to be held at certain fixed times, and the right of suf-
frage is secured to every citizen possessing the requi-
site qualifications. The new ballot law cannot infringe
upon the right of voters to select public servants at such
elections, or be so interpreted as to limit the range of
choice for constitutional officers to be nominated in the
modes prescribed by it. Nominations under it entitle
the nominees to places upon the official ballot printed
at the public expense, but the Missouri voter is still at
liberty to write on his ballot other names than those
which may be printed there.'' See, also, *Sanner* v. *Pat-
ton,* 155 Ill. 553, 40 N. E. 290; *Eckerson* v. *Des Moines,*
137 Iowa, 486, 115 N. W. 177; *State* v. *Ure* (Neb.), 135
N. W. 224; *State* v. *Johnson,* 87 Minn. 221, 91 N. W. 604,
840. The general effect of all these decisions, which are
applicable here, was to construe the several acts therein
discussed to mean that the legislature did not intend to
restrict the constitutional right of voters to cast their
ballots for whomsoever they pleased, but that the law
referred alone to what should be printed on the official
ballot, and the elector was not required to cast his bal-
lot for the particular persons whose names were so
printed upon the ballot, but he was at liberty to write
the name of another candidate upon the ballot, and thus
vote for his choice.

It is clear to us that section 6 of this act only refers
to the printing of the official ballot, but does not, even
if it was so intended, restrict the constitutional right of
a voter to vote for whomsoever he may please to vote.
We do not think that the constitutionality of section 7
of the act is properly before the court. Even though it
may be admitted that this section, which requires voters

to cast their vote for as many candidates as there are officers to be elected, is in violation of the Constitution, yet in our opinion it does not in any manner affect the balance of the act, as the law may stand without this section, and still be a complete expression of the legislative will. Section 23 of the act, providing that a candidate to be elected mayor or councilman must have resided three years in the city, may be eliminated from the law entirely without in any manner affecting the purpose of the act. The act is not for the benefit of candidates, but is designed to accomplish quite a different object. When the constitutional rights and privileges of a candidate have been invaded, it will be proper to consider the constitutionality of that feature of the act.

The act does not violate section 61 of the Constitution for the simple reason that nowhere does it attempt to revive or amend any section or sections of any statute of the state. The act merely provides an additional and diffrent method or plan for the government of cities, and may be made operative in any city of the state by holding the election prescribed by the act itself. There are now cities operating under special charters, and cities operating under chapter 99 of the Code of 1906, and this law provides another plan of municipal government, and it is as general in its operation as chapter 99, and may be made operative in any city of the class mentioned.

It is so well settled that legislation of this character is not a delegation of legislative power that we do not go into discussion of section 33 of the Constitution. *Rankin County* v. *Davis,* 59 South. 811, decided at this term, is decisive of this point.

The construction of an act embodying the features of chapter 120 is of first impression in this state, but it is not new in the jurisprudence of America, as the courts of Iowa, Washington, Kentucky, Kansas, Texas, Illinois, and Idaho have construed similar legislation. It is nota-

ble that all of the courts have steadfastly refused to see anything in the statutes of the several states which authorized the courts to destroy the laws reviewed. We cite the following cases: *Eckerson* v. *City of Des Moines,* 137 Iowa, 542, 115 N. W. 177; *State ex rel. Hunt* v. *Tausick,* 64 Wash. 69, 116 Pac. 651, 35 L. R. A. (N. S.) 802; *Bryan* v. *Voss,* 143 Ky. 422, 136 S. W. 884; *Cole* v. *Dorr,* 80 Kan. 251, 101 Pac. 1016, 23 L. R. A. (N. S.) 534; *Brown* v. *City of Galveston,* 97 Tex. 1, 75 S. W. 488; *People ex rel. City of Springfield* v. *Edmunds,* 252 Ill. 108, 96 N. E. 914; *Kessler* v. *Fritchman,* 21 Idaho, 30, 119 Pac. 692. It is clearly the intention of the act to preserve the *status quo* of each city availing itself of the operation of the act. The city as a municipal corporation is not abolished, and all of its ordinances and resolutions, past and prospective, will remain in full force. The contracts lawfully made, and to be made, by the present government, will be valid and binding on the city, and will be the contracts of the city when the new regime is inaugurated in January, 1913. The city will remain under the control of the present officers until then, and it is not contemplated that this act will become operative until the installation of the officers elected under its provisions. Nature abhors a vacuum, and the law will not tolerate a hiatus. All of this clearly appears from the act read as a whole. This act does not repeal or amend any section of an existing law. The act is a substantive law, and comes from the legislature complete and full grown, and will be in full operation in January, 1913, whenever the people of any city elect to have it so.

The numerous points made against the act are not to be treated as frivolous, because they are earnestly insisted upon, and able counsel in their elucidation of all of them manifest exhaustive research and grat ability. Due consideration has been given to all of the points, but we deem it unnecessary to notice them in detail, as, viewing the questions here involved from a broad standpoint,

we have reached the conclusion that many of the constitutional principles invoked to destroy this law, while ingeniously and strongly argued, have no application to the present case. We find ourselves unable to arrive at a satisfactory conclusion that any constitutional right is denied to, or taken from, appellants by the provisions of chapter 120 of the Laws of 1912.

The legislature in the exercise of its unquestioned power to enact general laws for the government of municipalities passed the act now before us for construction, which is a general law of the state, and has uniform application to all cities choosing to make the same operative by the method prescribed by the act itself. There is nothing in the Constitution limiting the power of the legislature to prescribe how municipalities may be governed, and this act merely creates a form of government in addition to the several plans now in full operation in the state. Representative government is not denied—the representatives are only reduced in number, no doubt with the hope that their quality and efficiency will thereby be improved. The sovereign people choose a few servants instead of many, and by every feature of the act the will and consent of the people is given full play in the choice of servants and the management of their affairs. It may be that some of the provisions of this act would violate some of the constitutional limitations, if the legislature should attempt to apply them to the government of the state, but, when applied to municipalities, we can find no inhibition to the exercise of the power herein conferred upon the people of cities. The canons of construction are too well established by the authorities, and so well understood by all students of the law, we do not cite any authorities or attempt to restate them. We may say, however, that we have read the act with care, always with open minds, to discover harmony rather than discord, and this we understand to be the spirit which should animate courts construing the acts of the legislative department of the state.

Where the question is properly before the court by this appeal, we are of opinion that the act is not plainly, palpably, beyond all question, inconsistent with the Constitution, but is in every respect a valid exercise of legislative power, and in no way conflicts with the state Constitution.

*Affirmed.*