STATE *ex rel.* ATTORNEY-GENERAL *v.* RATLIFF *et al.*

[66 South. 538.]

1. MUNICIPAL CORPORATIONS. *Officers. Disqualifications. Evidence. Presumptions. Municipal elections. Managers. Nominees. Petition. Voters. Rights of. Ballots. Rejection.*

Under section 3430, Code 1906, providing that, in case of an increase in indebtedness not authorized by a vote of the people, the mayor and aldermen shall not succeed themselves or each other, taxes levied are not a part of the indebtedness of a municipality, and increasing the tax levy without a vote of

the people, will not disqualify a mayor or alderman from succeeding themselves.

2. EVIDENCE. *Presumptions. Municipal elections. Managers.*
Under section 3437, Code 1906, election commissioners must be presumed to have properly acted as managers of an election, where it does not appear from the evidence that the municipality contained more than one election precinct.

3. EXECUTION. *Nominees. Petition.*
A municipal election was not void because the name of an individual was not placed on the ticket, as a candidate for alderman, where it does not appear from the evidence that the petition circulated therefor was filed with the election commissioners.

4. ELECTIONS. *Voters. Rights of.*
The voters in a municipal election have the right to write on the ticket the name of their choice for alderman.

5. ELECTION. *Ballots. Rejection.*
Where voters at a municipal election wrote the name of a candidate for alderman on the ticket, and placed a cross mark opposite the name so written, such votes should be counted and do not come within the scope of section 4156, Code 1906, providing for the rejection of ballots in certain cases.

6. ELECTION. *Ballots. Rejection.*
Ballots cast for a candidate at a municipal election, who is disqualified for holding the office, cannot be rejected and the certificate of election awarded to the next highest candidate, although such disqualification must have been known to the voters.

APPEAL from the circuit court of George county.
HON. T. H. BARRETT, Judge.

*Quo warranto* by the state of Mississippi, by the attorney-general, against W. D. Ratliff, consolidated with similar proceedings against Simon Landon, F. J. Cotton and T. P. Bailey. From a judgment in favor of respondents except T. P. Bailey, the State and Bailey, appeal.

This case was tried before the court in vacation upon an agreed statement of facts, which together with the opinion of the trial court are set out below in full.

"In the above entitled cause it is agreed that the following is a true and correct statement of facts, and the causes are submitted for trial and determination on this agreed statement of facts, to wit: .

"First. It is agreed that previous to January, 1913, the following named persons were officers of the town of Lucedale, to wit: J. A. Dorsett, mayor, S. J. Cotton, F. M. Young, H. J. Solomon, and Simon London, aldermen, J. M. Clark, marshal, and J. London, clerk.

"Second. It is further agreed that Minute Book No. 2, page 145, shows that at the November meeting of the mayor and board of aldermen of the town of Lucedale, to wit, November 5, 1912, said mayor and board of aldermen passed the following motion: 'On motion of Alderman London, seconded by Alderman Ratliff, T. R. James, J. J. Kennedy and J. W. Lane were appointed managers of the general election in December. T. R. James, Chairman.'

"Third. At the regular meeting December 3, 1912, the following resolution was passed, as shown by Minute Book No. 2, page 146: 'On motion of Alderman Ratliff, seconded by Alderman Young, the minutes of the last meeting were corrected to read in the last motion: "T. R. James, J. J. Kennedy and J. W. Lane were appointed election commissioners to hold general election in December." T. R. James, Chairman.' At which time, to wit, December 3d, at the regular December meeting, the motion above referred to as having been passed at the November meeting was interlined in red ink, and the words "managers' scratched out and the word 'commissioners' written above and noted in red ink on the margin of the page to the left thereof. See correction on page 146, fourth paragraph.

"On page 146, Minute Book No. 2, at December 3, 1912, regular meeting of the mayor and board of aldermen of the town of Lucedale, the minutes show the following: 'T. R. James presented his resignation as election com-

missioner on account of important business that needed his attention on election day; and on motion of Alderman Young, seconded by Alderman Ratliff, same was accepted.'

"On page 146 of the same minute book as mentioned above, the following order appears: 'On motion of Alderman Ratliff, seconded by Alderman Young the clerk was instructed to write notice to the three election commissioners informing them of the appointment, and to have same signed by the mayor and himself.' This order was spread upon the minutes of the December 3, 1912, regular meeting of the board of mayor and aldermen of the said town of Lucedale.

"On page 146, Minute Book No. 2, December 3, 1912, meeting, regular meeting of the mayor and board of aldermen of the town of Lucedale, the following order appears: 'On motion of Alderman Young, seconded by Alderman Cotton, R. F. Ratliff was appointed election commissioner and chairman of election commission in place of T. R. James, resigned, and R. F. Ratliff authorized and instructed to prepare ballots.'

"Minute Book No. 2 of the town of Lucedale, on page 112, appears the following order, to wit, which was passed at the October 3, 1911, meeting of the regular meeting of the mayor and board of aldermen of the said town of Lucedale, at which meeting was present W. D. Ratliff, mayor *pro tem,* Aldermen Cotton, Young, and Solomon; and at which meeting the following order was spread upon the minutes, as shown upon page 112, as follows: 'On motion of Aldermen Young, seconded by Aldermen Ratliff, the assessment rolls were received, approved, and adopted for the fiscal years 1911 and 1912; and on motion of Alderman Ratliff, seconded by Alderman Young, the levy for the years 1911 and 1912 was fixed as follows: General fund, five mills; school fund, eight mills; sinking fund, two mills; interest fund, two mills; total, seventeen mills'—which amount was collected by the town of Lucedale for the year 1911.

"At page 142 of the said Minute Book No. 2 of the town of Lucedale, it is shown that at the October 1, 1912, regular meeting of the mayor and board of aldermen, there were present Mayor J. A. Dorsett, Aldermen W. D. Ratliff, H. J. Solomon, S. J. Cotton, S. London, and F. M. Young, at which meeting adjourned until Tuesday night October 8th, at seven-thirty p. m. At page 143 of said minue book, on October 8, 1912, the following motion appears: 'Adjourned meeting of mayor and board of aldermen; present Mayor Dorsett, Aldermen Ratliff and Young and Cotton and Solomon and London. On motion of Aldermen Young, seconded by Alderman Cotton, the real and personal rolls were accepted and filed as revised. On motion of Alderman Ratliff, seconded by Alderman Young, the tax levy for the fiscal years 1912 and 1913 were made as follows: General fund, six mills; school fund, eight mills; interest fund, two mills; sinking fund, two mills; total, eighteen mills'—which amount was collected as taxes by said town of Lucedale for the year 1912, and that no election was held as provided by law to authorize an increase under the statute.

"On or about the —— day of September was held in the town of Lucedale to nominate candidates for the various offices in the town a democratic primary, and the nominees were as follows: W. D. Ratliff, mayor; G. G. Timberlake, W. W. Eley, E. W. Tanner, S. J. Cotton, N. C. Freeland, aldermen; J. F. Harrison, marshal; Simon London, clerk—and all of these candidates accepted the nomination and issued a card of thanks to the voters. Later said G. G. Timberlake, who was nominated to be voted for in the general election as alderman, left with Dr. W. D. Ratliff his resignation, addressed to the commissioners of the town of Lucedale, which is in the following words and figures, to wit: 'November 18, 1912, to the Election Commissioners of the Town of Lucedale. Gentlemen: Owing to business conditions I find that I will be compelled to make a change of residence for a

while at least so deem it best that I offer my resignation as town alderman. With best wishes for you and Lucedale, I am Yours truly, G. G. Timberlake.' Said resignation was handed to Dr. W. D. Ratliff, as aforesaid, on the 18th day of November, and same was handed by Dr. Ratliff to T. R. James, chairman of the board of manager or commissioners eight days thereafter, said James being out of town of Lucedale for seven days continuously, and said James presented the said resignation to the mayor and board of aldermen at their next succeeding meeting, when same was read to the board by Mayor Dorsett, said meeting being held on December 3d, it being shown heretofore by the minutes that notice of the appointment of these commissioners or managers was sent out December 3d.

"It is agreed that T. R. James, commissioner or manager, got his first information that he was by the board appointed a commissioner or manager, whichever it was, about seven days after the date that the said Timberlake handed his resignation to Dr. Ratliff, and that he had been out of town seven days prior to the time he received this information.

"A petition, containing fifty-four names, to have the name of P. P. Bailey placed on the ticket at the regular December election of the town of Lucedale, and which petition was acted upon by the authorities of the town of Lucedale, and his name was placed upon the ticket it being adjudged by the said authorities that there were, out of the fifty-four names, at least fifty qualified electors. A copy of the petition with the signatures thereto is herewith attached. Exhibit No. A.

"Immediately after the appointment of R. F. Ratliff as chairman of the election commissioners he proceeded to have printed the ballots for use in the general election, placing thereupon the following names: For mayor, W. D. Ratliff; for aldermen, W. W. Eley, S. J. Cotton, E. W. Tanner, N. C. Freeland, and P. P. Bailey; for marshal, F. J. Harrison; for clerk, Simon London.

"On the 10th day of December, 1912, J. J. Kennedy and R. F. Ratliff, two of the election commissioners or managers hereto mentioned, met at the courthouse at Lucedale for the purpose of holding the municipal election for municipal officers. J. W. Lane, one of the election commissioners or managers, failing to appear to fill his place at said election, R. F. Ratliff and J. J. Kennedy, the remaining managers or commissioners, appointed A. B. Eubanks in the place of the said Lane to act as election commissioner, who was thereupon sworn in and entered upon the discharge of his duty as one of said managers or commissioners, and they proceeded to hold said election. The said R. F. Ratliff and J. J. Kennedy appointed as clerks of the election A. A. Allman and M. E. Cochran, and said clerks took the oath of office and proceeded to assist in the holding of said election. At said election there was cast sixty-two listed votes, one vote which was voted under protest, leaving sixty-one votes without protest, and on thirty-two of said votes was written the name of G. G. Timberlake with pen and ink; and twenty-eight of these ballots were voted for by placing a cross opposite the written name of said Timberlake for alderman of the said town of Lucedale. The said P. P. Bailey received as alderman the sum of twenty-four votes, none of which were protested, and all of the other candidates for aldermen received more than twenty-four votes. In fact a majority of the votes cast, including the votes that were written for said Timberlake and all others, and which votes stand as follows, excluding the thirty-two votes that were laid aside because the name of Timberlake had been written thereon, stood as follows including the said thirty-two votes upon which the name of Timberlake had been written. See paragraph marked 'Exhibit B' herein.

"After the close of the election when the count of the ballots was begun, R. F. Ratliff, who was one of the election managers or commissioners, who was appointed

to take the ballots from the box laid aside the ballots upon which the name of Timberlake was written and refused to allow the clerks to count them, but they continued to count through the votes in the box until all were taken out and counted, excluding the votes upon which the name of Timberlake had been written. Whereupon said M. E. Cochran and said Allman, clerks, and said J. J. Kennedy, one of the managers or commissioners, stated that they would not sign the returns to the said commissioners unless they counted the thirty-two votes laid aside, which had the name of Timberlake written thereon, and whereupon the said Dr. R. F. Ratliff and A. B. Eubanks signed the returns, showing the said candidates to have received the following number of votes, to wit. See paragraph C herein. The managers and clerks all dispersed that night; there was no meeting of the managers and clerks the next day; but on the following day or second day thereafter, to wit, the 12th of December, they met at three o'clock at the Central Drug Store, the meeting place of the mayor and board of aldermen, and there were present R. F. Ratliff, J. J. Kennedy, and A. B. Eubanks, at which time and place said R. F. Ratliff and A. B. Eubanks signed and certified the returns of the election to the Secretary of State, as follows, a copy of which is herewith attached, and it is agreed that the copy now on file with the Secretary of State may be used for this purpose. See paragraph herein, and which report of the election the said J. J. Kennedy refused to sign because they had not counted the thirty-two ballots which had the name of Timberlake thereon. And from which said returns to the Secretary of State up to this day they have heard naught.

"It is agreed that the Secretary of State never issued to the said defendant's certificates of election of commissions; that on the first Monday of January said W. D. Ratliff appeared at the office of the then acting mayor to take the oath of office, and the mayor declined to ad-

minister the oath because the mayor-elect, the said W. D. Ratliff, did not have a commission from the Secretary of State, and after which on the same day he appeared at the office of T. H. Byrd, a notary public, and took the oath of office as mayor of the town of Lucedale, and said S. J. Cotton, P. P. Bailey, as aldermen, and Simon London, as clerk, did likewise, and that Aldermen W. W. Eley, E. W. Tanner, and J. F. Harrison as marshal, at seven-thirty p. m., on the first Monday of January, appeared before the acting mayor, J. A. Dorsett, and took the oath of office as aldermen and marshal, but who also did not have commissions from the Secretary of State, and that the oath of office taken by said Eley, Tanner, and Harrison were not filed with the town clerk, nor did the said parties take any further or other action toward organization of a board or otherwise.

"It is further agreed that at the time the notary public administered the oath to Ratliff, Cotton, and Bailey and London, he told them that he could swear them 'but that all hell could not qualify them.'

"On the 15th or 16th of January, 1913, J. A. Dorsett issued a call and signed it as mayor, calling the members of the old board of aldermen to a call meeting of the mayor and board of aldermen; that said call being in the words and figures as follows, to wit. See Exhibit E. And said parties met at Dr. Ratliff's office, which was the regular meeting place of the mayor and board of aldermen. And on the same day W. D. Ratliff, claiming to be the mayor, issued a call and signed the same as mayor to the newly elected board of aldermen to meet at the office, which was the place of meeting of the mayor and board of aldermen at the same time; thereupon they met at the time and place designated in said call. There were present at said meeting the following named persons: W. D. Ratliff, Simon London, H. J. Solomon, Dr. J. A. Dorsett, E .W. Tanner, P. P. Bailey. Whereupon Dr. Dorett stated that they had quorum of the old board

present if they would all act, and thereupon Dr. W. D. Ratliff arose in the meeting and stated that he would not recognize him, Dorsett, as mayor of the town, and refused to act; the others said naught, except Simon London, who said that he had assumed the duties of clerk under the new administration, and thereupon could not act as one of the old administration as alderman. E. W. Tanner said, 'I have not qualified.' And it is agreed that this call as given out by Dr. Dorsett was signed by H. J. Solomon, S. London, and S. J. Cotton of the old board of aldermen, and that said Dr. Dorsett and his followers have not had an official meeting since that time, but said Dr. W. D. Ratliff issued a call a few days thereafter for a meeting at the same place as heretofore, and at which meeting there were present the following, to wit: F. M. Young, member of the old board, S. J. Cotton, who succeeded himself, and P. P. Bailey, and S. London, clerk, which meeting was called to order by W. D. Ratliff acting as mayor, and the following things were had and done as shown by the minutes made at the time, a copy of which is hereto attached. Exhibit F hereto.

"It is agreed that said G. G. Timberlake moved to Louisiana in the month of November, and is now living at Bogalusa, Louisiana. For fifteen days before the election it was a well-known fact that Timberlake had moved to Louisiana.

"It is agreed that sixty-one votes were cast in said election, and twenty-six had the name of Timberlake written on the bottom of the ticket with an 'X' opposite the name. Timberlake's name was written lengthwise on the ticket on one with an 'X' opposite and one mark 'for Timberlake' and four with Timberlake's name with no cross opposite the name at all. 'We the undersigned election managers regularly appointed by the mayor and board of aldermen of the town of Lucedale to hold regular municipal election on the 10th day of December met

at the office of Dr. W. D. Ratliff at the Central Drug Store to canvass the returns of the election held on said 10th day of December; present, Dr. W. D. Ratliff, J. J. Kennedy, and A. B. Eubanks, and find that the following officers received the following votes, and declared them elected, to wit: For mayor: W. D. Ratliff, twenty-seven votes. For Marshal: J. F. Harrison, twenty-seven votes. For clerk: Simon London, twenty-eight votes. For Alderman: S. J. Cotton, twenty-seven votes; E. W. Tanner, twenty-five votes; W. W. Eley, 25 votes; N. C. Freeland, twenty-seven votes; P. P. Bailey, twenty-four votes. (Signed). R. F. Ratliff, Election Commissioner and Ticket Manager. A. B. Eubanks, Manager.' The above is the same report and canvassing that is referred to in the statement heretofore as taken place at three o'clock on December 12, 1913.

"It is further agreed that fifteen days before the election, after supper, at night, a petition was circulated asking that the name of C. T. Breitpaupt be placed on the municipal tickets as a candidate for alderman, but only thirty-five signatures were secured to said petition; said petition is hereto attached and marked 'Exhibit G.'

"It is further agreed that there is no issue of law or fact raised by the plaintiff with reference to said election except as set forth in the agreed statement of facts."

JUDGMENT OF THE COURT BELOW UPON THE AGREED
STATEMENT OF FACTS.

"These are four causes of action which were submitted to me on an agreed statement of facts, and heard by agreement of counsel in vacation at Hattiesburg, and having been requested to submit my opinion in writing, I beg leave to submit as follows:

"I find that there are several issues in this case, which may be stated as follows: First, the legality of the election, which of course goes to all four of the defendants, Second, if the election is upheld, the question of whether

or not W. D. Ratliff and F. J. Cotton are disqualified from holding office under section 3430, Code of 1906, which question does not involve the other two defendants. Third, if the election is valid, whether or not P. P. Bailey received a sufficient number of votes, under the circumstances of the case, as would entitle him to hold office.

"In the matter of the legality of the election will say, from the agreed statement of facts, said election does not seem to be attacked for anything prior to the time of counting of the votes, and I am of the opinion that the thirty-two ballots upon which the name of Timberlake was written should have been counted in the election, as I believe the voter has the right to vote for whomsoever he pleases, and if there was any doubt as to the outcome of the election, by reason of the laying aside of these thirty-two votes, I think this election should be declared null and void. However, in the agreed statement of facts, on page 5 thereof, it is agreed that all of the other candidates, exclusive of Bailey, received a majority of the votes cast, including the thirty-two votes that was written for said Timberlake. In other words, it is an admitted fact that Ratliff, London, and Cotton received a majority of all the votes cast, and, the election having been regular and proper up to the time of counting the votes, that is to say the closing of the polls, I believe the will of the people was duly expressed, and that therefore the election of Ratliff, London, and Cotton should be upheld.

"Now as to the matter of qualification of W. D. Ratliff and F. J. Cotton. On reading section 3430 of the Code, will say that, while I am urged to declare section 3430 unconstitutional, I decline to consider the constitutional phase of the matter, because, from my view of the statute and the evidence in the case, it seems to me it is unnecessary. The section above referred to, so far as disqualifying a man from holding office is concerned, is

penal, and therefore must be strictly construed. It cannot be stretched in the slightest, and nothing can be read into it that is not expressly and clearly written therein.

"Passing over the question as to whether the raising of the tax levy is sufficient to show that there had been an increase of taxations contemplated by the statute, I will go at once to what I deem the conclusive point in this particular issue.

"The sentence that disqualifies a mayor or alderman from succeeding themselves or each other reads as follows: 'In case of an increase of indebtedness not so authorized, the mayor and aldermen shall not succeed themselves or each other.' Said sentence does not, in my opinion, expressly disqualify a mayor or aldermen man from succeeding themselves or each other upon an increase of taxation, but only by reason of the sole fact of an increase of indebtedness not authorized in an amount provided by the first part of said section. Therefore I am of the opinion that Ratliff and Cotton can succeed themselves, or each other.

"That brings us down to the remaining issue involving P. P. Bailey. I am urged to declare Bailey duly elected on the theory that the thirty-two votes cast for Timberlake were voluntarily thrown away by electors with full knowledge that Timberlake was disqualified. I cannot come to that conclusion upon the agreed statement of facts. It appears that Timberlake tendered his resignation on the 18th of November, but the same was not made public until the meeting of the mayor and board of aldermen on the 3d day of December, and, it being a matter of common knowledge that frequently right on the eve of elections matters are suddenly sprung in the interest or against certain contestants in an election, I can well understand why the electors who were partial to Timberlake could believe that this was merely an election scheme, or that those opposed to Bailey could feel the same way. And the clause in the agreed statement of

facts, as follows: 'For fifteen days before the election it was a well-known fact that Timberlake had moved to Louisiana'—is sufficient to say that the thirty-two voters who voted for him had actual knowledge of his disqualification. It might have been well known to one-half of the people of Lucedale without being well or conclusively known to the other half, and I think that it should not be presumed that the voter voluntarily threw away the available privilege of voting for an officer unless such facts are shown as would tend to prove such to be the case beyond a reasonable doubt. Elections are held to determine the will of a majority of the people, and in this election I believe that it was the will of a majority of the people that W. D. Ratliff serve as their mayor, and Simon, London, and F. J. Cotton as their aldermen, and clerk, and that P. P. Bailey do not serve.''

*Talley & Mayson,* for appellant.

*Deavours & Sharbrough* and *Cook & Backstrom,* for appellee.

SMITH, C. J., delivered the opinion of the court.

Appellees Ratliff and Cotton were not disqualified to succeed themselves, for the reason that the preceding board of aldermen, of which they were members, had increased the tax levy without being authorized so to do by a vote of the people. Section 3430 of the Code is plain and unambiguous, and no resort to rules of construction are necessary in order to understand its terms. It provides that, "in case of an increase in indebtedness not so authorized, the mayor and aldermen shall not succeed themselves or each other," and taxes levied are not a part of the indebtedness of a municipality.

The election commissioners must be presumed to have properly acted as managers of the election under section 3437 of the Code, for the reason that it does not ap-

pear from the agreed statement of facts that the municipality contained more than one election precinct.

There is no merit in the contention that the election was void because the name of C. T. Breitpaupt was not placed on the ticket as a candidate for alderman, for the reason, if no other, that it does not appear from the agreed statement of facts that the petition circulated therefor was ever filed with the election commissioners.

The voters had the right to write the name of G. G. Timberlake on the ticket as their choice for alderman. *City of Jackson* v. *State,* 102 Miss. 663, 59 So. 873.

At least twenty-eight of the thirty-two ballots on which the name of Timberlake was written should not have been rejected by the commissioners as within the condemnation of section 4156 of the Code, for the reason that it appears from the agreed statement of facts that:

"On thirty-two of said votes was written the name of G. G. Timberlake with pen and ink, and twenty-eight of these ballots were voted for by placing a cross opposite the written name of said Timberlake for alderman of the said town of Lucedale."

From this we must conclude that it appeared from the ballots that the votes cast for Timberlake were for the office of alderman. The rejection of these ballots is immaterial in so far as all of appellees other than Bailey are concerned, because it is admitted that they received a majority of all of the ballots cast. Since Bailey received only twenty-four votes, it appears that Timberlake had a clear majority of at least four over him, and therefore he, Bailey, should not have been declared elected.

There is no merit in the contention that because Timberlake was disqualified to hold the office the votes cast for him must be rejected and the certificate of election awarded to Bailey. *Sublett* v. *Bedwell,* 47 Miss. 266, 12 Am. Rep. 338. That "it was a well-known fact that Timberlake had moved to Louisiana," and therefore that his

disqualification must have been known to the voters is immaterial. *Barnum* v. *Gilman,* 27 Minn. 471, 8 N. W. 375, 38 Am. Rep. 304; note to *Gulick* v. *New,* 77 Am. Dec. 59.

*Affirmed.*